Mr Chief Justice Marshall
 

 delivered the opinion of the Court.
 

 This writ of error is brought to a judgment of the court of the United States, for the district of Columbia, sitting in the county of Alexandria; which was rendered in a cause in which Joseph Lawrence, survivor of Lawrence &. Poin-dextér, was plaintiff, and the Columbian Insurance Company of Alexandria were defendants.
 

 The suit was brought on a policy insuring a mill, stated in the representation and in the policy, to belong to Lawrence & Poindexter, the assured. Pending the suit, Poin-dexter died; and the suit was continued and tried i» 4he name of Lawrence the survivor. The verdict and judgment were in favour of the plaifitiff below.- At the trial, the court,
 
 *43
 
 on the motion of the defendant’s counsel, instructed the jury on several questions of law which were made in the case; to which instructions the counsel for the .defendants in the circuit court excepted, and the cause is now before this Court on those exceptions.
 

 The plaintiff in the circuit court had exhibited his policy, the representation on which the contract of insurance, was •founded; his proof&of title and of loss, the notice which he gave of that loss, together with the documents which accompanied it, as preparatory to the assertion of his claim against the company; and the proceedings of the company in consequence of that claim, which terminated in a refusal to pay it. The counsel for the plaintiff in the circuit court, having thus concluded his case, the counsel for^the defendants made three objections to his right of action.
 

 1. That the interest claimed by the plaintiff in -the property insured, as disclosed by the evidence ; was not, at the
 

 • respective times of effecting the insurance, and of the happening of the loss, an insurable interest and property.
 

 2. That it was not such an interest as is described in the original offer of the plaintiff’s agent for insurance, and in the policy; nor such as is averred in the declaration.
 

 3. That the said documents produced as preliminary proof of loss, do not import a fulfilment, on the.part of the plaintiff, of the terms and conditions upon which the loss is declared to be payable, by the ninth of the said printed rules anexed. to the policy.
 

 And the counsel for the defendants thereupon prayed the opinion and direction of the court to the jury, that the said evidence was not admissible, competent, and sufficient to be left to the jury as proof of the plaintiff’s title to recover for such loss in this action.
 

 The court refused to give this instruction, being of opinion, 1. That the interest of the plaintiffs in the property insured, as disclosed by the said evidence, is a sufficient insurable interest to support the policy, and the averment of interest in the plaintiffs’ declaration in this action.
 

 .2. That it is such an interest as is described in the origi
 
 *44
 
 nal 'offer for insurance, and in the policy, and in the declaration.
 

 3. That although the said certificate of Murray .Forbes is not such a certificate as is required by the said ninth rule annexed to the said policy; yet the evidence aforesaid is admissible, competent, and sufficient to be left to the jury •, and from which they may infer, that the defendants waived the objection, to the said certificate, and to the other preliminary proof aforesaid.
 

 The counsel for the defendants in error have made some preliminary objections to the terms in' which the opinion of 'the circuit court was asked. .The counsel prayed the opinion and direction of the.pourtto the jury,.that the evidence offered by the plaintiff was not admissible, competent, and sufficient to. be left to the jury as proof of the plaintiff’s title to recover. This blending of an objection to the admissibility of evidence in the same application which questions its sufficiency,'is said to be not only unusual; but to confound propositions distinct in themselves, and to be calculated to embarrass the court, and the questions to be decided.
 

 It is undoubtedly true, that questions respecting the admissibility of evidence, are entirely distinct from those which respect its sufficiency or effect. They arise in different stages of the trial, and cannot with strict propriety be propounded,at the same time. If, therefore, the circuit court had proceeded no further than to refuse the instruction which was asked, this Court might have considered the re-fusál as proper; unless the entire prayer, as made, ought to have been granted. But the circuit court proceeded to give its opinion on the. different points made by counsel, and these opinions must-be examined.
 

 I. The first is, that the interest of the assured in the property insured, is a sufficient insurable interest to support the policy, and the averment of interest in thq declaration.
 

 The. mill insured was built on an island in the Rappahan-noc, which was demised by Charles Mortimer to Ste^ffien Winchester, for. three lives, renewable for ever, abthe year
 
 *45
 
 ly rent of £80, ($266 66 cents;) with a condition of re-entry for rent in arrear, &c..
 

 ,1801, Dec. 19. S;; W. conveyed; one undivided third part to Richard Winchester, and another undivided third part'to Joshua Howard;
 

 1806, May 9. R. and S. Winchester conveyed to Joghua Howard, by deed of mortgage in fee, -their two thirds of the said island, with other property tó á considerable amount, in order to secure the said Howard to the amount of .$40,000.
 

 1813, Jan. 27. Joshua Howard conveyed the' Whole island to-William and George Winchester.
 

 1813, Sept. 23. William and George Winchester conveyed the island to Joseph Howard and Joseph W; Lawrence.
 

 1818, July 22. Joseph Howard entered into an.agreement with Joseph W. Lawrence, by which the said Lawrence was to take the island, &c, at the price of $30,000; for which amount in debt's, due from Howard & Lawrence^ he was to procure a release"; on his doing which, Howard was to execute a deed for the ■ property; on the failure or inability, of Lawrence to procure this release, the contract was to be vpid..
 

 1822, Nov. 28. Joseph W. Lawrence enters into an agreement with Thomas Poindexter, Jun. for the sale of one half of the island, mills, &c.; for. which the said Poindexter agrees to assume and. take upon himself one half the debts due from Howard & Lawrence to the banks in Fredericks-burg ; which were secured by a deed of trust.
 

 Nov. 29. An agreement between Howard and Lawrence to work the mills in partnership.
 

 By the deeds of January 27, and Sept. 23, 1813, all the title of Joshua Howard
 
 to
 
 the island on which the mills insured were’erected, passed to Joseph Howard and Joseph W. Lawrence. What was that title*?
 

 He iield one third part in his own right, and the remaining two thirds as. mortgagee.
 

 ■ The agreement of July 22; 1848; between Howard and Lawrence, does not appear to have been performed on the part of Lawrencenor is theré any evidence of his ability
 
 *46
 
 to perform itbut it-does not appear that Howard has taken, any step to avoid it, or has asserted any title in himself.
 

 The agreement of Nov. 28, 1822, between Lawrence and Poindexter, admits Poindexter to' an undivided moiety of any interest Lawrence might have in the property.
 

 Lawrence & Poindexter then, when the insurance was made, were entitled to one third of the property under the deed made by Charles Mortimer, and to the remaining two thirds as .mortgagees; but one moiety of the whole, which moiety was derived from Joseph Howard under the agreement of July 22, 1818, was held under an agreement which had not been complied with, and which purported on its face to be void if not complied with; but the other contracting party had not declared it void, nor called for a compliance with it.
 

 It cannot be doubted, we think, that the assured had an interest in the property insured. Lawrence had an unquestionable title to a moiety of one third, subject to the rent reserved in the original lease, and to a moiety of the remaining two thirds as mortgagee. He had such title to the other moiety as could be acquired by an agreement for a purchase, the terms of which had not been complied with
 

 The title is thus stated, because those words which declare the contract to be void if Lawrence should fail to comply with it, do not, we think, renden it absolutely void, l>ui only voidable. . No time for performance is fixed; and if Howard, is content .with what has- been done by Lawrence, and dries not- choose to annul the contract, the underwriters of this policy cannot treat it as a nullity. Lawrence, Having this .title under an executory contract, sells to Poindexter one undivided moiety of the property. These two persons, being both in possession, partly under legal conveyances and partly under executory contracts, require an insurance on it against loss by fire. Had they an insurable interest's
 

 That an equitable interest may be insured is admitted. We can percei ve no reason which excludes an interest held under an executory contract.. While the contract subsists,
 
 *47
 
 the person claiming under it has undoubtedly a substantial interest in the property. If it be destroyed, the loss in contemplation of law, is his. If the purchase money be paid, it is his in fact. If he owes the purchase money, the property is its equivalent, and is still valuable to him. The embarrassment of his affairs may<be such that his debts may absorb all his property; but this circumstance has never been considered as proving a want of interest in it. The destruction of the property is a real loss to the person in possession, who claims title under an executory contract, and the contingency that his title may be defeated by subsequent eVents does not prevent this loss. We perceive no reason why he should not be permitted to insure against it. The cases cited in argument, and those summed up in
 
 Phillips on Insurance,
 
 26, on insurable interest, and in 1
 
 Marshall,
 
 104, ch. 4., and 2
 
 Marshall,
 
 787, ch. 11, prove, we think, that any actual interest, legal or equitable, is insurable.
 

 2. Having declared the interest of Laurence & Poindexter to be insurable, the circuit court instructed the jury that “ it is such an interest as is described in the original offer for insurance, and in the policy, and in the declaration.”
 

 The original offer for insurance was in these words,
 

 “ What premium will you ask to insure the following property belonging to Lawrence & Poindexter-, for one ydar against loss or damage, by fire 9 On their stone mill four stories high, covered with wood, on an island about one mile from Fredericksburg in the county of Stafford; the mill called .Elba mill. Seven thousand dollars are wanted. Not within thirty yards-of any other building, except acorn house, which is about twenty yards off.”
 

 The policy states that the underwriters insure Lawrence & Poindexter against loss or damage by fire, to the amount of ‡7000 on
 
 their
 
 stone mill, &e. •
 

 The declaration charges that the defendánts insured thé plaintiffs $7000 against loss or damage by fire on
 
 their
 
 stone mill, &c.; and avers that they were interested in, and the
 
 *48
 
 equitable owners of the premises insured as aforesaid at the time the insurance was made as aforesaid, &c.
 

 . The material inquiry is, does the offer for- insurance state truly the interest of the assured in the property to be insured? The offer describes the property as
 
 belonging
 
 to Lawrence
 
 &
 
 Poindexter; and states it afterwards to be
 
 their
 
 stone mill. It contains no qualifying terms,, which should lead the mind to suspect that their title was not complete and absolute. The plaintiffs, in error contend that the terms import an absolute legal estate in the property; and that the. insurers entered .into the contract, having a right to believe that the interest of the assured was of this character.
 

 Instead of such an estate in the property as the representation justified the insurers in expecting, the proof shows that the insured held only one half of one third, under a lease for three lives, renewable for ever, and one half of.the other two thirds as mortgagees; that the other moiety was held under a contract, the. terms of which had not been complied with; and which, if complied with, would give them a title to two thirds of that moiety only as mortgagees.
 

 The defendants insist that the representation is satisfied by an equitable title under an executory contract, and that in truth and in fact, the mill did, at the. time of its insurance and loss, belong to Lawrence & Poindexter.
 

 It may be true, that a mill occupied by Lawrence and Poindexter, and held under a lease or an executory contract, would be generally spoken of by themselves and others as their mill. The property alluded to would be well understood, and no inconvenience could arise from this mode of designating it. But if Lawrence & Poindexter should -proceed to sell the property as theirs, should describe it in the contract as belonging to them,' no court would compel the purchaser to take the title they could make,
 

 • The assured ihen have not proved “ such an interest as is described .in the original offer for insurance;” arid the. circuit court, in this respect, misdirected the jury. It may
 
 *49
 
 be proper to take some notice of the materiality of this misdirection.
 

 The contract for insurance is one in which the underwriters, generally, act on the representation of the assured; and that representation ought consequently to be fair, and to omit nothing which it is material for the underwriters to' know. It may not be necessary that the person requiring insurance, should state every incumbrance on his property, which it might be required of him to state, if it was offered for sale; but fair dealing requires that he should state every thing which might influence, and probably would influence, the mind of the underwriter in forming or declining the contract. A building held under a lease for years about to expire, might be generally spoken of as the building of the tenant; but no underwriter would be willing to insure it as if it was his; and an offer for insurance, stating it to belong to him, would be a gross imposition.
 

 Generally speakipg, insurances against fir? are made in the confidence, that the assured will use all the precautions to avoid the calamity insured against, which would be suggested by his interest. The extent of this interest must always influence the underwriter in taking or rejecting the risk, and in estimating the premium. So far as it may influence him in these respects, it ought to be communicated to him. Underwriters do not rely so much upon the principles as on the interest of the assured ; and it would seem, therefore, to be always material that they should know how far this interest is engaged in guarding, the property from loss.
 
 'Marshall,
 
 in treating on insurance against fife, p. 789, b. 4, ch.
 
 2,
 
 says; “ It is not necessary, however, in order to constitute an insurable interest; that the insured shall, in every instance, have the absolute and unqualified property of the effects insured. A trustee, a mortgagee, a reversioner, a factor or agent, with the custudy of goods to be sold upon commission, may insure; but with.this caution, that the nature of the property be distinctly specified.”
 

 In all the treatises on insurances, and in all the cases in which the question has arisen, the principle is, that a mis
 
 *50
 
 representation, which is material to the risk, avoids the policy. In this case the circuit court has decided that there is no misrepresentation; that the interest of the assured was truly described in the offer for. insurance; and consequently, no question on the materiality of the supposed variance was submitted to the jury.
 

 As this court is of opinion that a precarious title, depending for its continuance on events which might or might not happen, is not such a title as is described in the offer for insurance, construing the words of that offer as they are fairly to be understood; the circuit court has in this respect mis-directed the jury.
 

 3. The third opinion given to the jury is, that the evidence given by the plaintiff in the circuit court, was admissible, competent and sufficient to be left to the jury, and from which they may infer that the defendants waived the objection to the said certificate, and to the other'preliminary proof aforesaid. The certificate to which this instruction refers, is, by one of the rules which form conditions of the policy, declared to be an indispensable requisite; without the production of which, the loss claimed “ shall not be payable.” A certificate intended by the assured to .satisfy this condition, accompanied the proof of loss; but it is not such a certificate as the condition requires; and such w>as the opinion of the circuit court. The testimony which the court left to the' jury as being sufficient to authorize them to infer a. waiver on the part of the insurers of this certificate, consisted of entries on the minutes of the board, with some parol proof.
 

 On the 20th of February 1824, the claim of Lawrence & Poindexter was submitted to the board with the policy and certificate, of loss.
 

 On the 13th of March, an order was made, requiring the title papers of Lawrence & Poindexter to the Elba mill. Oil the first of April, copies of the deed from William and George Winchester to Joseph Howard and Joseph Lawrence, of the agreement between Howard and Lawrence, and of the agreement between Lawrence and Poindexter, were laid be
 
 *51
 
 fore the board. On the 16th of April, farther proof respecting the title was required, which was produced on the 22d of the same month.
 

 The opinion of Mr Jones was taken on the case, which was submitted to the board on the 28th of June, when it was resolved, “ that the claim of Lawrence & Poindexter bere-sisted; and that the secretary furnish them with a copy of this resolution.
 

 The opinion of Mr Jones-turns on the interest of the Assured, and on the question whether the loss was fair or fraudulent.
 

 On the 11th of November, inquiry was made whether the board would enter into a compromise, “ it being understood that the agreement” “is not to be considered as an admission of the claim
 
 V’ ■
 
 Answered “ yes.”
 

 On the 18th of Nqvembér, the board passed a resolution declining a compromise, which was communicated to the agent of Lawrence & Poindexter. .
 

 On the 11th of December, a farther and more spécific proposition for a compromise was made by the agent of the assured, which was rejected by the company.
 

 The secretary of the company was examined, to prove the communications between him and the agent of the assured. When the documentary evidence was exhibited, he informed the agent that he would call a board to decide on the claim. After the board had met and adjourned, he informed the agent that the claim would probably be resisted; that the company thought the interest of the assured was not insurable ; that the representation was not faithful; and that Poin-dexter had set fire to the mill. No objection was made to the preliminary papers. The custom of the board was, if the claim for indemnity was thought just,'to refer the preliminary papers to their secretary to see if they were regular. In this case no such reference was made.
 

 From the first presentation of the papers in February, till the passing of the final resolution in June, the claim was pending undetermined before the board, waiting for the advice of counsel. This advice being delayed by the hb-
 
 *52
 
 sence and other engagements of counsel, an agreement was entered into with the agent of the assured, that if the final resolution, should be to resist the claim, the suit should be put as' forward on the docket as if brought to the intervening April term. This agreement was complied with. All the orders and resolutions of the board which have been stated were communicated- by the witness to the agenbof the assured; and are the only communications which he was authorized to make.
 

 According to the invariable usage of the board, the sufficiency of the documents offered by way of preliminary.proof of loss, as required by the ninth article of the rules annexed to the policy; was not to be considered by the beard, till the principle of the claim should have been admitted, and then the course was to submit such documents to the secretary for a special report thereon; in this cáse the sufficiency of the documents was never discussed or considered by the board, nor referred to the secretary. It never was contemplated by the witness, nor to his knowledge by the board, to waive any compliance with this ninth article. The consideration of the documents offered under it, did not regularly come on till the claim should be admitted in principle..
 

 ■ The agent of the assured was present .at some of the meetings of the board when the witness was absent. He has understood that on these occasions the corhmunidations between them, turned entirely on questions respecting the fundamental objections to the claim. The regularity or irregularity of thé preliminary proof was never mentioned. The opinion'given by counsel was never communicated to the assured or their agent. To have'done so, would have been contrary to the rules and to usage.
 

 This evidence was left to the jury as testimony from which they might infer that the preliminary proof, required by the ninth rule annexed to the policy, as indispensable to entitle the assured to demand payment for a loss, had been waived by the underwriters.
 

 It will not be pretended that any expression is to be found either in the resolutions of the board or in the conversations
 
 *53
 
 held by their secretary with the agent of the assured, having the slightest allusion to this preliminary proof or to the waiver of it. If then the jury might infer a waiver, the inference must be founded on the opinion that the board was bound to specify this particular objection; or that they have taken some step or made some communication, which presupposes an acquiescence in the certificate which was offered.
 

 ' The’ resolution of the board to resist the claim is expressed in general terms,' and consequently applies to every part of the testimony offered in support of it.' We knoVv of no -principle nór usage which requires underwriters to specify their objections, or which justifies the inference that any objection is waived. We know of no principle by which this preliminary proof should be separated from the other proofs which were required to sustain the claim, and its insufficiency be. remarked to the assured. The general resolution of the board was notice to the assured that if they intended to assert their claim in a court of justice, they must come into court prepared to support it.
 

 2.'Did'the examination of the title and the proceedings of the board respecting it, presuppose an examination of the preliminary proofs, and an acquiescence in its sufficiency?
 

 We think not. The proof of interest, and the certificate which was to 'precede payment, if the claim should be admitted ; are distinct parts of the case to be made out by the assured. Neither of those parts depends on the other. The one or the other may be first considered, without violating propriety or convenience. The. consideration of the one does not imply a previous consideration and approval of the other. The langúage of the ninth rule does not imply that the proof it requires is first in order for consideration.. After stating what shall be done by the assured, the rule requires the affidavit and. certificate in question; and adds, that, “until such affidavit'and certificate are produced, the loss claimed shall not be payable.’^ The affidavit and certificate must precede'the payment, but need not precede the consideration of the claim.
 

 
 *54
 
 The testimony of the secretary, if not conclusive on this point, is, we think, entitled to'great weight. He states the invariable usage of the office to have been, to consider the merits of ,the claim before looking into the preliminary proof,, which, after; deciding favourably on the claim, was always referred to him .for examination and report. In this case the decision having been unfavourable to the claimant, no.reference was made to him.
 

 We do not think the .assured can be presumed ignorant of the standing usage of the office, to which he applied, for insurance; or be admitted to found upon that ignorance a claim to exemption from the necessity of producing a document required by the policy, as indispensable to his demand of payment for his loss.
 

 We think the case exhibits no evidence of waiver; no-evT- - dence from which the jury could infer it, and consequently that this instruction of the court is erroneous.
 

 It would have been subject of much regret, had the merits of the case been clearly in favour, of the defendants in-ef-ror, to reverse the judgment of the circuit court on account of the non-production of a document, which may perhaps be so readily supplied. But the cause mirstgo back on the opinion expressed by the circuit court to the jury, that the title proved at the trial agrees with that stated in the offer for insurance.
 

 After the opinions which have been stated had been delivered to the jury, the defendants offered evidence to prove the insolvency of the plaintiffs, so as to disable them from obtaining a legal title; and additional embarrassments on the property; and again moved the court to instruct the jury, that the assured had not such an' interest in the property as entitled them or either of them to recover. This instruction the court refused to. give, being still of opinion that the assured held an insurable interest in thé mill. An exception was taken to this opinión.
 

 The additional incumbrances to the title, and the circumstances of Lawrence & Poindexter, might constitute additional objections to the representation contained in the offer
 
 *55
 
 for assurance; but do not, we think, disprove an insurable interest in those who were still in possession of the property, and claimed title to it under executory contracts.
 

 The defendants in the circuit court then proved that the mill was a square building built of stone to the . eaves, that the roof was framed and covered entirely of wood, and that the two gable ends running up perpendicularly from the stone wall to the top of the roof, were also-constructed of wood. They also-offered evidence to prove the general understanding, that the description of a stone house covered with wood was not verified or supported by a house whose gable ends were of wood; that the gable ends wdre understood to be a part of the. wall, not of the roof or covering. They then moved the pourt to instruct the jury, that if two of the exterior walls terminated in upright gable ends; such gable ends not properly forming, accofding to ordinary rules and terms of architecture, á part of the covering or roof; it. was necessary in order to verify the said description, that such gable.ends should have been of stone; and if,,Un point of fact, such gable ends as well as the covering or roof were of wood, which under any circumstances of actual conflagration might have increased either the risk of catching fire or the difficulty of extinguishing it; it amounted to a materia! misrepresentation, and avoids the policy; and it is not material whether the said misrepresentation was wilful and fraudulent, or from ignorance and without design; nor whether that actual loss was produced by such misrepresentation, or by having gable ends of wood instead of stone.
 

 The court, refused to give this instruction, being “ of opinion that it was competent to' the jury, from all the facts given in evidence, to decide whether,"in order to verify the said description in the said policy, it was necessary that the whole of the exterior walls from the foundation to the top of the roof should be of stone. And being also of opinion that under the first of the rules annexed to the said policy, and referred to therein; no Variation- in the description of the property insured, from the true description thereof, not made fraudulently f, would vitiate the policy unless by reason
 
 *56
 
 of such variation the insurance was made at a lower premium than would otherwise have been demanded.”
 

 To this opinion also an exception was taken. The rule referred to in the opinion requires, that
 

 “ Persons desirous of making insurance on buildings should state in writing the following particulars, to wit, of what materials the walls and roof of each building are constructed,” &c. “ And if any person, shall cause the same to be described in the policy otherwise than as they really are, so as the same be charged at a lower premium than would otherwise be demanded; such insurance shall be of no force.”
 

 If the court was correct in the construction of this rule, and of its effect upon the policy, it will become unnecessary te examine their opinion, leaving the question whether the property insured was truly described, entirely to the jury.
 

 This rule takes up the subject of describing the property, and provides for it.- It requires that the materials of which the walls and roof are constructed shall bé truly stated, and prescribes the penalty for a mis-statement. The penalty is, that the insurance shall be void, if the assured shall cause the building to- be described in the policy otherwise than it really is,
 
 so as the same be charged at a lower premium than would otherwise be demanded.
 

 The rule does not place the invalidity of the policy on an untrue description of the building; but on such a description as shall reduce the premium which would otherwise have been demanded. This was a. question-of fact which the jury alone could decide.
 

 The rule having provided for the case, and prescribed the precise state of things in which the penalty shall be incurred, we do not think that it could be applied in any other state of things. The jury was of opinion that if the building was untruly described, still the misrepresentation was not such as to cause the same £{ to be charged at a lower premium than would otherwise have been demanded.” If this verdict was against evidence, the remedy-was a new trial.
 

 This court is of opinion that the circuit court erred in instructing the jury that the interest of- the assured in the
 
 *57
 
 property insured is such as is described in the original offer for insurance and in.the policy; and also in the opinion given to the jury that the evidence was sufficient to be left to them, from which they might infer that the defendants waived the objections to the certificate and other preliminary proof required by the ninth rule annexed to the policy.
 

 The judgment is to be reversed, and the cause remanded to the circuit court that a venire facias de novo may be awarded.
 

 This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, and was argued by counsel; on consideration whereof, this Court is of opinion that the said-circuit court erred in this; in instructing the jury that the interest of the assured in the property insured is such as is described in the original offer for insurance and in the policy. And also that the said circuit court erred in this; in the opinion to the jury, that the evidence was sufficient to be left to them,, from which they might infer, that the defendants waived the objections to the certificate and other preliminary proof required by the ninth rule annexed to the policy. Whereupon, it is considered by this Court that the said judgment of the said circuit court in this cause be, and the same is hereby reversed and annulled, and that the said cause be, and the same is hereby remanded to the said circuit court with directions to award a venire facias de novo, and for further proceedings to be had therein according to law and justice.