13190

MILHOUS v. GLOBE & RUTGERS FIRE INSURANCE CO.

(159 S. E., 506)

97

Messrs. *Wolfe & Wolfe* and *Brantley & Zeigler,* for appellant,

Messrs. *Lide & Felder* and *C. E. Summers,* for respondent,

June 30, 1931.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE.

This is an action upon a policy of fire insurance. The cause was tried before a jury in the County Court of Orangeburg County and a verdict directed by the trial Court for defendant insurance company.

The exceptions, while five in number, make but the single point, that the case should have been submitted to the jury.

A brief statement of the undisputed facts shows:

Plaintiff at one time owned the land and buildings involved in this action, which were incumbered, however, by a mortgage to Edisto National Bank. The bank subsequently foreclosed its mortgage, bought in the property at the sale under foreclosure proceedings, and took a deed of conveyance of the property. The bank, then being the owner in fee-simple, entered into a contract in writing dated November 24, 1925, with plaintiff, to sell her the property for the sum of $6,200.00. The purchase price was to be paid in annual installments as therein set out. With respect to insurance on the property, the contract of sale provided that the bank "may keep up *for its own protection* the insurance on the dwelling on said land for such amount as it may see fit, which in case of loss may be used either to replace the dwelling, as may be needed, or to reduce the indebtedness, as the said bank may see fit to do." (Italics added.) The bank, under this provision of the contract, effected in other companies than defendant insurance for $3,000.00 which was collected when the property was destroyed by fire on December 7, 1929, and applied upon the indebtedness due under the contract. It would appear from the evidence that there was a total loss of the property insured.

On November 6, 1929, defendant issued its policy of insurance to plaintiff for the total sum of $1,500.00, against loss or damage by fire to the dwelling house in the sum of $1,300.00 and to household furniture in the sum of $200.00. The property insured under this policy was stated to be of the value of $3,000.00. The fire and loss occurred December 7, 1929. Upon its denial of liability this action was commenced against defendant.

The complaint is in the usual form for an action of this character. The answer, after admitting the issuance of the

contract of insurance in controversy, set up a number of defenses which it is not necessary at this time to consider.

At the conclusion of all the testimony defendant made a motion for a directed verdict in its favor upon the entire policy, while plaintiff moved for a directed verdict in her favor in respect to the insurance in the sum of $200.00 on the furniture and household goods. The Court submitted to the jury the question of defendant's liability upon the item of $200.00 insurance on the furniture. Upon this item the jury found for plaintiff and from this ·finding there is no appeal. The Court, however, directed a verdict for defendant on the item of $1,300.00 insurance on the real estate, which caused this appeal.

While defendant proffered several grounds in support of its motion for a directed verdict, the trial Court placed its order only upon one ground. The formal order in writing should be reported. In substance, the Court held that the value of the property insured having been fixed in plaintiff's policy at $3,000.00 and this amount having been collected by the bank under its policies and credited to plaintiff's account in accordance with the contract of purchase, plaintiff could not recover on the policy the subject of this action.

We think the Court was in error in this conclusion. The facts covering the issuance of this policy to plaintiff and the interest covered by it were disputed and in conflict, and consequently raised an issue or issues properly determinable by a jury. It was not disputed that at the time this policy was issued and delivered to plaintiff, she had paid under her contract of purchase with the bank something more than $1,500.00. As a vendee under an executory contract of sale, she then had an insurable interest in the property, separate and distinct from that of the bank, at least to the extent of the amount so paid. There was testimony tending to show that she told the agent of defendant that there was already $3,000.00 insurance on the property to the Edisto National Bank; that she had contracted to buy

the place; that the property was "mine and the bank's"; and that after giving him this information the policy was delivered to her. The testimony of defendant tended to deny these statements. This conflict clearly made the issues so arising questions for solution by the jury.

The law governing the case is clear. Plaintiff admittedly had an insurable interest in the property, 14 R. C. L., pp. 916 and 1054. *The value of that interest* was fixed by the parties, according to plaintiff's contention. Her testimony further tended to show that she insured *that interest* for $1,-300.00 and that defendant accepted the risk and issued its policy to ·her, collecting the premiums therefor. That issue and the questions presented were peculiarly for the jury under proper instructions of the Court.

It is the judgment of this Court, therefore, that the order appealed from be reversed and a new trial granted.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran (concurring in result): This is an action upon a fire insurance policy, issued by the defendant to the plaintiff, dated November 6, 1929, for $1,300.00, covering a building located upon a tract of 70 acres, the title to which was in the Edisto National Bank, which had made a contract for the sale of it to the plaintiff.

It appears that Mrs. Milhous, the plaintiff, at one time owned a tract of 70 acres, upon which was located a dwelling house of some size, occupied by her. She mortgaged the premises to the Edisto National Bank. Later the bank foreclosed the mortgage and at the sale became the purchaser and received title deed therefor. The bank then entered into a written agreement with Mrs. Milhous, dated November 24, 1925, by which it was agreed that she repurchase the property from the bank at the price of $6,200.00, under the executory contract which gave her five years within which to pay for it, the payments not to be less than $620.00 per annum, with interest on the whole at 6 per cent. per annum. Upon

this contract she paid, between November, 1926, and April, 1928, $1,614.98, leaving a balance unpaid, as of the latter date, of approximately $5,500.00.

The contract between Mrs. Milhous and the bank provided: "It is further understood and agreed that the said bank may keep up for its own protection the insurance on the dwelling on said land for such amount as it may see fit, which, in case of loss, may be used either to replace the dwelling, as may be needed, or to reduce the indebtedness, as the said bank may see fit to do."

The bank accordingly procured insurance on the house in the sum of $3,000.00 and kept it up until December 7, 1929, at which time the house was destroyed by fire. The bank collected the insurance money upon its policy and applied it to the purchase obligation of Mrs. Milhous.

In the meantime, on November 6, 1929, Mrs. Milhous had procured insurance upon the building with the defendant company for $1,300.00 (not upon her equitable interest under the contract), as if she held the title to it; in the policy the agreed valuation of the building was fixed at $3,000.00.

After the destruction of the house by fire, the payment of $3,000.00 to the bank upon its policy, and the application by the bank of that amount to the purchase obligation of Mrs. Milhous, she demanded of the defendant company payment of the $1,300.00 policy which had been issued by it to her in November, 1929. Upon its refusal to honor her demand this action was instituted. It came on to be tried before his Honor, Judge Moss of the County Court, and a jury, at June term, 1930. At the conclusion of the testimony his Honor directed a verdict in favor of the defendant upon the $1,300.00 policy, basing his order upon the ground that as the value of the house was fixed in the policy issued to the plaintiff at $3,000.00, and as the proceeds of the policy issued to the bank for $3,000.00 had been collected by the bank and applied to the debt of the plaintiff, she was not entitled to recover anything upon the policy issued to her. (The

motion of the defendant for a directed verdict was based upon other grounds than that stated, none of which were passed upon by the presiding Judge.) From the judgment entered upon the verdict so directed the plaintiff has appealed.

I do not at all appreciate the force of the ground upon which his Honor based the direction of a verdict in favor of the defendant; in fact, I do not think that the agreed valuation clause in the policy held by Mrs. Milhous has anything to do with the case, as I shall endeavor to demonstrate.

The matter is much complicated by the fact that Mrs. Milhous endeavored to procure, and did procure, insurance upon the building as if the title thereto was vested in her; she had parted with her title, and had acquired only an equitable interest in the property under the executory contract entered into for its repurchase by her from the bank which had acquired the legal title; an objection which the defendant company raised upon the trial, but which was not passed upon by the presiding Judge, and of course is still open. I do not think that there is justification for the statement made in the opinion of Mr. Justice Cosgrove : "The value of that interest was fixed by the parties, according to plaintiff's contention. Her testimony further tended to show that she insured that interest for $1,300.00. * * *" I do not find anything in the case to sustain this conclusion or to modify what is perfectly plain from the allegations of the complaint and from the terms of the policy, that she intended to and did have *the building* insured, valued at $3,000.00, as if she held title thereto. There is nothing to show that she intended to take out insurance upon her equitable interest or that the valuation of $3,000.00 had reference to anything but the value of the building.

But assuming that she intended to insure her equitable interest, and that the agreed valuation referred to that interest and not to the building, a violent assumption, I do not think that there can be a doubt that Mrs. Milhous, as the purchaser of the property under the executory contract of sale and be-

ing in possession thereunder, had an insurable interest in the building. In fact, under the case of *Good v. Jarrard*, 93 S. C., 229, 76 S. E., 698, 702, 43 L. R. A. (N. S.), 383, it was held that when the vendee is in possession under his contract, it becomes his duty to protect his and the vendor's interests by having the building insured. It is also held in that case that when the vendor is in possession, it becomes his duty to have the property insured, and that such insurance inures to the protection of the vendee as well as of himself. It follows therefore that the insurance taken out by the vendee in possession inures to the protection of the vendor as well as of himself.

That Mrs. Milhous had an insurable interest in the building is settled by the authorities. 14 R. C. L., 916, where the text is supported by a number of decided cases, including the case of *Columbian Ins. Co. v. Lawrence*, 2 Pet., 25, 7 L. Ed., 335, which has repeatedly been reaffirmed as will appear by reference to Rose's Notes.

In the *Good v. Jarrard case, supra,* the vendee was not in possession and had paid no part of the purchase price. The Court held that, "The insurable interest of the vendee was negligible, being merely the difference between the value of the land and the agreed price.   *   *   *"

I do not think that this rule should apply to a case like the present, where the vendee is in possession and has made payments upon the purchase price. In my opinion the insurable interest of Mrs. Milhous *in the building* was the difference between the value of the building and such portion of the outstanding debt as should reasonably be borne by the building, as both the building and the land stood sponsor for the debt.

There was evidence tending to show that the building and the land had a value each of $6,000.00, notwithstanding the fact that the agreed valuation of the building fixed in the policy issued to Mrs. Milhous was $3,000.00. If this statement by her be assumed as true and the debt was $5,500.00,

it is clear that her interest in the building was the difference between $6,000.00 and one-half of the debt, $2,750.00, $3,250.00, in excess of the amount of the insurance on the building, $1,300.00 in the policy issued to her by the defendant.

Against this assumption is the fact that the bank sold the entire property, building and land, to her for $6,200.00. If that should be considered the value of the entire property and the building and the land were of equal value, the value of the building would be $3,100.00, practically the figure fixed in the valuation clause of her policy. Her insurable interest then would be the difference between $3,100.00 and one-half of the debt, $2,750.00, $350.00.

In an interesting note to the case of *Reed v. Lukens*, 44 Pa., 200, 84 Am. Dec., 425, it is clearly demonstrated: (1) That a person who is in possession of real estate under a valid subsisting contract of purchase is the equitable owner, and has an insurable interest in it although he may not have paid all of the consideration money, citing cases; (2) that the vendor also has an insurable interest in the property which he may have contracted to sell, citing cases; (3) that regardless of whether there be an agreement to that effect or not, the vendor who may have collected insurance upon a policy procured for his protection should hold it as trustee for the vendee; (4) that the vendee who may have procured insurance for his own benefit upon his insurable interest, without any agreement to insure for the benefit of the vendor, is not accountable to him for the proceeds of insurance in the event of loss.

It seems clear therefore that both the bank and Mrs. Milhous had the right to procure insurance upon their respective interests, and the amount of their several recovery would be limited to the extent of their interests. She had the right to insure that interest, regardless of the fact that the bank had insured its interest for $3,000.00; and the defendant had the right to issue the policy to her, regardless of the notice, which

she claims to have given to the agent, of the policy taken out by the bank.

There is no question in the case as to the extent of the insurable interest of the bank; it has realized upon its policy and applied the proceeds to the debt of Mrs. Milhous. There is, as I have endeavored to show, a serious contest as to the extent of the insurable interest of Mrs. Milhous. She should not be permitted to realize more than that interest amounted to. It depends upon the ascertained value of the building: if $6,000.00, $3,250.00; if $3,100.00, $350.00; an issue of fact determinable by a jury.

The bank, acting under the clause in the contract quoted above, took out insurance to the extent of $3,000.00; collected it after the fire, and applied the proceeds to the reduction of the plaintiff's indebtedness, the purchase price of the property; she in fact received the benefit of the insurance collected by the bank and now contends that she is not only entitled to retain that "reduction," but is entitled to the $1,300.00 additional; in other words, she will receive under her contention $4,300.00, upon an interest which, viewed in the most favorable light to her, amounts to only $3,250.00. That does not seem right or just.

I think that it was reversible error to direct a verdict in favor of the defendant as was done, but that, upon this phase of the case, it should have been left to the jury to determine the extent of the insurable interest of Mrs. Milhous and to render a verdict in conformity with the foregoing conclusions. It should be understood that upon the new trial which should be ordered, all issues not passed upon by the presiding Judge, upon the trial which was had, shall be left open.